LAS MONJAS RACING CORPORATION, demandantes, *v.* JOHN DOE y RICHARD ROE, ET ALS. demandados, y FRANCISCO FONTANALS, interventor y apelante. LAS MONJAS RACING CORPORATION, demandante y apelada, *v.* JOHN DOE, RICHARD ROE, ET ALS., demandados y apelantes.

Nos. 6054 y 6055.—*Sometidos:* Julio 11, 1932. *Resueltos:* Julio 26, 1932.

*Julio Reguero,* abogado del apelante Raimundo Faura en el caso No. 6055 y *Molina, Dubón & Ocholeco,* abogados del apelante Francisco Fontanals en el caso No. 6054; *Feliú & La Costa,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Los recursos números 6054 y 6055 se interpusieron contra una misma sentencia. Se ha solicitado su desestimación por frívolos. Consideraremos la cuestión levantada, que es la misma en ambos casos, en esta sola opinión.

El 28 de junio de 1931 se celebraron carreras de caballos en el Hipódromo de ''Las Monjas Racing Corporation.'' Funcionaron los juegos de *pool* y bancas. Se efectuaron siete carreras. De acuerdo con la ley y los reglamentos todas las sumas de dinero jugadas, después de descontarse las cantidades que determina la ley, deberán pagarse a la persona

o personas que acierten los siete caballos ganadores. Cuando nadie acierta los siete, o cuando se declara nula alguna carrera, la suma se reparte entre los que aciertan seis o el mayor número de caballos ganadores.

Sucedió que una de las carreras fué anulada. Correspondía entonces la distribución entre los que acertaron los caballos ganadores en las seis restantes, pero como hubo personas que además de acertar en las seis carreras dejadas subsistentes acertaron también en la declarada nula y reclamaron a la Corporación que celebró las carreras para ellas exclusivamente toda la suma a distribuir, la Corporación se dirigió a la corte de distrito y depositó en ella dicha suma ascendente a $15,991.50 para ser pagada a quien de acuerdo con la ley correspondiera.

Francisco Fontanals, uno de los que acertó los siete caballos, pidió intervenir y se le concedió permiso para formular como formuló su demanda. También Raimundo Faura, otro de los que acertó los siete caballos en las siete carreras, presentó su reclamación. Los que acertaron seis reclamaron sus derechos. Y después de haberse acordado entregar a los que acertaron siete la parte proporcional de lo que les correspondería distribuyendo la suma entre todos los que acertaron siete y seis y después de haberse citado a todos los interesados, fué el pleito a juicio.

Los interventores trataron de presentar prueba sobre lo erróneo de la resolución del Jurado declarando nula la segunda carrera. Se opusieron los que acertaron seis. Y la corte resolvió que la prueba era inadmisible y que carecía de jurisdicción para revisar la decisión del Jurado, dictando sentencia de conformidad.

Contra esa sentencia fué que apelaron separadamente Fontanals y Faura.

Los artículos 18 y 19 de la Ley Hípica Insular de 1927 tales como fueron enmendados por la Ley No. 44 de 1929, Leyes de 1929, páginas 245 y 247, dicen:

"Artículo 18.—El jurado es el encargado de velar por el cumplimiento de las reglas que dictare la Comisión Hípica Insular para el funcionamiento de las carreras. Las decisiones del jurado serán firmes e inapelables, excepto en los casos en que su decisión imponga un correctivo mayor de seis meses, en los cuales podrá apelarse para ante la Comisión Hípica Insular, la cual tendrá obligación de resolver dicha apelación dentro del término improrrogable de diez (10) días y cuyo fallo será definitivo e inapelable, salvo lo que dispone el artículo 6 de esta Ley. . . . ."

"Artículo 19.—En todas las cuestiones que tuviere que resolver dicho jurado como cuerpo, la decisión de la mayoría será concluyente; *Entendiéndose,* que tanto las corporaciones y personas que especulen con el negocio de hipódromo, así como los dueños de caballos, *jockeys,* cuadreros, *trainers,* o cualesquiera otros interesados, quedarán supeditados a dichas decisiones; *Disponiéndose,* que en todo caso que el jurado considere que en alguna carrera han ocurrido irregularidades, deficiencias o maniobras que prima facie hagan apreciar que la carrera ha sido verificada y conducida de un modo ilegal o malicioso, deberá suspender sus efectos para el pago del *pool* y bancas, pero dando cuenta inmediatamente a la Comisión Hípica Insular, de su acuerdo y de sus fundamentos, y dicha Comisión Hípica Insular, dentro de un término que no podrá exceder de cuarenta y ocho horas a contar desde la celebración de la carrera, y previa audiencia pública de las partes interesadas, resolverá la validez o nulidad de dicha carrera, y la resolución que dictare será firme, ejecutoria e inapelable, y contra ella los jueces y tribunales no admitirán demanda ni recurso judicial alguno ordinario ni extraordinario.

"Cuando el jurado por cualquier circunstancia descualificase algún caballo, el dinero que a éste se haya apostado en las bancas les será devuelto a los interesados."

Si se aplica el artículo 18 debe resolverse que las decisiones del Jurado serán firmes e inapelables, excepto en los casos que expresa, en los que claramente no está comprendida la resolución de que se trata en éste.

Si se aplica el artículo 19 que fué el interpretado por esta Corte Suprema en el caso de *Ortiz* v. *Comisión Hípica Insular,* 39 D.P.R. 771, como parece que es lo procedente, debe concluirse que tuvo razón la corte sentenciadora al negarse a admitir prueba sobre los hechos que sirvieron de base al Jurado para dictar su resolución.

Todo lo que la ley requiere es que cuando el Jurado considere que en alguna carrera han ocurrido irregularidades, deficiencias o maniobras que prima facie hagan apreciar que la misma fué verificada y conducida de un modo ilegal o malicioso y suspenda sus efectos para el pago de *pool* y bancas, dé cuenta inmediatamente a la Comisión Hípica Insular de su acuerdo y de sus fundamentos, y dicha Comisión Hípica Insular, dentro de un término que no podrá exceder de cuarenta y ocho horas a contar desde la celebración de la carrera, y previa audiencia pública de las partes interesadas, resuelva sobre la validez o nulidad de la carrera.. Su resolución será firme, ejecutoria e inapelable y contra ella los jueces y tribunales no admitirán demanda ni recurso judicial alguno ordinario ni extraordinario.

A juzgar por los documentos que obran en los autos, el Jurado informó a la Comisión con respecto a las carreras celebradas el 28 de junio, conteniendo su informe un párrafo que dice:

"La segunda carrera fué anulada para los efectos del *pool* y con el voto disidente del Jurado Marrero, por haber transcurrido los diez minutos reglamentarios para las salidas."

Y aparece además que la Comisión aprobó el informe al día siguiente, 29 de junio, según se deduce de la siguiente nota:

"En relación con este informe el Comisionado Sr. Barbosa manifiesta que tiene conocimiento de que 'Las Monjas Racing Corporation' ha consignado en la Corte de Distrito el importe del *pool* de las carreras celebradas el día 28 de junio, 1931, y propone que la Comisión autorice para el público la siguiente declaración:

" 'La Comisión Hípica Insular ha recibido el informe del Jurado en el cual se hace constar que la segunda de las carreras celebradas el día 28 de junio, 1931 en el hipódromo Las Monjas fué declarada nula para el *pool* de conformidad con el artículo 239 del reglamento, por decisión de la mayoría de dicho cuerpo.

" 'En virtud de las disposiciones del artículo 19 de la Ley Hípica que dispone que en todos los casos que tuviere que resolver dicho Jurado como cuerpo, la decisión de la mayoría será concluyente;

entendiéndose, que tanto la corporación o persona que especule con el negocio de hipódromos así como los dueños de caballos, *jockeys,* cuadreros o *trainers,* o cualesquiera otros interesados quedarán supeditados a dichas decisiones, la función de la Comisión en este caso se limita a aprobar dicho informe contra el cual no cabe recurso de reconsideración alguno ni ante la Comisión ni ante los tribunales de justicia de acuerdo con la jurisprudencia establecida por el Hon. Tribunal Supremo de Puerto Rico, al resolver el caso de Ortiz vs. Comisión Hípica Insular, 39 D.P.R. 771–774.

" 'Consecuentemente, el montante del *pool* del referido día deberá ser repartido por el administrador del *pool* del hipódromo Las Monjas entre las personas que acertaron los seis (6) caballos ganadores.

" 'Puesta a votación esta moción, fué aprobada por unanimidad.' "

Siendo eso así, parece que la ley se ha cumplido y que de acuerdo con la misma para nada tienen que intervenir los tribunales. Sin embargo, leyendo la nota preparada para el público del acuerdo de la Comisión Hípica Insular, que es lo único que se llevó a los autos, se advierte que no se consigna expresamente que se celebrara la previa audiencia pública de las partes interesadas a que se refiere la ley. Esto no aparece alegado como motivo de nulidad en las demandas o peticiones de los interventores. Se señala como error en el alegato de Faura. Ante ese señalamiento que levanta no una cuestión referente a los motivos que tuviera el Jurado para actuar, sino al procedimiento seguido ante la Comisión ¿puede sostenerse que el recurso sea frívolo? En el caso en que se fundó la corte, en que se fundan los peticionarios y en que se fundó la misma Comisión, esto es, en el de *Ortiz* v. *Comisión Hípica Insular,* 39 D.P.R. 771, 773, esta corte dijo:

"Así, pues, la decisión del jurado se hace girar sobre la opinión formada por dicho cuerpo, y no sobre la existencia de 'irregularidades, deficiencias y maniobras, graves, que prima facie hagan apreciar que la carerra ha sido verificada y conducida de un modo ilegal y malicioso.' No se dispone un juicio *de novo* ante la Comisión Hípica. Tampoco se dispone la formalidad de un juicio, ni siquiera de una investigación en primera instancia. El jurado puede actuar inmediatamente por la impresión derivada de la observación personal. La

comisión puede proceder sobre la decisión del jurado y sus fundamentos, como punto de partida y base para la audiencia pública que haya de concedérseles a las partes interesadas. Una audiencia pública de las partes interesadas es todo lo que la ley exige. La petición en el presente caso alega expresamente que la decisión de la comisión fué dictada después de tal audiencia.''

¿Hay base en los autos para sostener que no se celebró la audiencia? Hemos dicho que no consta expresamente de la nota dada al público del acuerdo de la Comisión que se celebrara, pero en verdad no existe prueba de que la Comisión no actuara después de haber oído o dado una oportunidad para oír a las partes interesadas. Y el récord está completo ante nos. La corrección de los procedimientos se presume.

Ya dijimos que la cuestión no se levantó en las demandas o peticiones. Tampoco se ofreció prueba sobre ella en el acto de la vista.

*Bajo esas circunstancias nos inclinamos a resolver que no pudiendo sostenerse que la Comisión no celebrara la audiencia que ordena la ley, los recursos resultan enteramente frívolos, debiendo en tal virtud desestimarse.*